UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM BOSSEY,

|                                                    |                                  |
| -------------------------------------------------- | -------------------------------- |
|                                                    | **REPORT AND** |
|                                 Plaintiff,          | **RECOMMENDATION** |
|                                                    |                                  |
|                                                    | 07-CV-116 |
|                 V.                                 | (LEK/VEB) |
|                                                    |                                  |
| COMMISSIONER OF SOCIAL SECURITY,[1]                |                                  |
|                                                    |                                  |
|                                 Defendant.          |                                  |

_____

## I. INTRODUCTION

In August of 2001, Plaintiff William Bossey filed an application for Supplemental

Security Income ("SSI") benefits under the Social Security Act.  Thereafter, in March of

2004, Plaintiff filed applications for disability and disability insurance benefits under the Act.

Plaintiff alleges that he has been unable to work since August 15, 1985, due to multiple

medical conditions, including mental impairments and a personality disorder.   The

applications were consolidated and denied by the Commissioner of Social Security.

Plaintiff, through his attorney, Judith A. Pareira, Esq., commenced this action on

January 31, 2007, by filing a Complaint in the United States District Court for the Northern

District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's

denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 19, 2009, the Honorable Norman A. Mordue, Chief United States District

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.
The Clerk of the Court is hereby directed to substitute Commissioner Astrue in place of his predecessor,
Jo Anne B. Barnhart, as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of
Civil Procedure.

Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff filed an application for SSI benefits on August 1, 2001, claiming that he had been unable to work since August 15, 1985.  (T at 114-16).[2]  The application was denied on November 8, 2001. (T at 34-37).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on December 27, 2001.  (T at 38).  A hearing was held in Plattsburgh, New York on November 19, 2002, before ALJ Carl Stephan.  (T at 464-79).  Plaintiff appeared and was represented by counsel.  (T at 464).

On April 25, 2003, the ALJ issued a written decision denying Plaintiff's application for SSI benefits.  (T at 60-71).  Plaintiff requested a review of the ALJ's decision and on September 24, 2004, the Social Security Administration's Appeals Council remanded the case for further proceedings.  (T at 78-81).  In sum, the Appeals Council concluded that the initial decision did not contain a sufficient discussion and evaluation concerning the nature and severity of Plaintiff's mental impairments.  (T at 79).

On March 16, 2004, while the Appeals Council was considering Plaintiff's request for review of the ALJ's initial decision, he filed claims for disability and disability insurance benefits under Title II of the Social Security Act and for SSI benefits under Title XVI of the Act.  In its decision, the Appeals Council directed the ALJ to "associate the claim files and

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8)

issue a new decision on the associated claims." (T at 81).

ALJ Stephan conducted a second hearing on April 25, 2006.  (T at 480-505).  The hearing was again held in Plattsburgh, New York, and Plaintiff appeared and was represented by counsel.  (T at 480).

On June 21, 2006, the ALJ issued a written decision denying Plaintiff's consolidated application for benefits.  (T at 8-29).  ALJ Stephan's decision became the Commissioner's final decision on December 4, 2006, when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

Plaintiff commenced this action on January 31, 2007 (Docket No. 1).   The Commissioner interposed an Answer on August 16, 2007.  (Docket No. 9).  Plaintiff through counsel, filed a supporting Brief on January 22, 2008.  (Docket No. 16).  The Commissioner filed a Brief in opposition on May 12, 2008.  (Docket No. 22).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ."

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health

& Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); <u>see also Rosa v.</u>

Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

In the written decision issued on remand,[3] the ALJ noted that Plaintiff's application for disability and disability insurance benefits presented a threshold question regarding whether Plaintiff met the insured status requirements of sections 216 (i) and 223 of the Social Security Act.  (T at 10).  The ALJ concluded that Plaintiff's earnings record indicated that he had "acquired sufficient quarters of coverage to remain insured through June 30, 1988."  (T at 10).  The ALJ then noted that Plaintiff had failed to offer any evidence of severe impairments prior to June 30, 1988.  (T at 12).  Based upon the foregoing, the ALJ determined that Plaintiff was not entitled to SSI or disability insurance benefits. (T at 12).

---

[3]ALJ Stephan's decision on remand, dated June 21, 2006, is referred to hereinafter as "the ALJ's decision."  (T at 8-29).

With regard to Plaintiff's claim for SSI benefits, the ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 12).  Further, the ALJ found that Plaintiff has multiple impairments (obesity, asthma, major depressive disorder, obsessive-compulsive disorder and post traumatic stress disorder) considered "severe" under the applicable regulations.  (T at 12).  However, the ALJ concluded that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Social Security Administration Regulations (the "Regulations"). (T at 17).

After reviewing the medical evidence, the ALJ concluded that Plaintiff "has the residual functional capacity to perform light work that does not require more than occasional climbing, stooping, crouching, crawling, balancing and kneeling; requires no climbing of ladders, scaffolding and ropes; does not require exposure to concentrated amounts of dust, fumes, smoke, chemicals, noxious gases or extremes of temperature and humidity, and allows for occasional problems with understanding, remembering and carrying out detailed instructions, dealing with work stresses and interacting with the public." (T at 18).

The ALJ noted that the Plaintiff has no past relevant work.  (T at 24, 27).  Considering Plaintiff's age (Plaintiff was born on October 22, 1952), educational background (high school education), lack of relevant work experience, and residual functional capacity, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy.  (T at 27).  Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for SSI benefits. (T at 28).

7

As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  He offers five (5) principal arguments.  First, Plaintiff contends that the ALJ erred by failing to consider a New York State Disability Review Team Certificate.  Second, he asserts that the ALJ should have concluded that Plaintiff had a medically determinable impairment listed in Appendix I of the Regulations.  Third, Plaintiff argues that the ALJ erred by giving substantial weight to the opinions offered by non-examining consultive physicians Dr. Satloff (a psychiatric expert) and Dr. Abeles (an orthopedic expert).  Fourth, Plaintiff contends that the ALJ should have given controlling weight to the opinion of his treating physician.  Fifth and finally, Plaintiff asserts that the ALJ improperly relied upon defective testimony offered by a vocational expert.

This Court will address each argument in turn.

### a.    Failure to Consider State Disability Findings

On November 19, 2001, the New York State Department of Family Assistance completed a Disability Review Team Certificate. (T at 289).  The reviewing physician, identified as "S. White," concluded that Plaintiff met the listing of impairment under Section 12.04 (Affective Disorders) of the Listing of Impairments set forth in Appendix 1 of the Regulations.  The ALJ did not specifically reference this finding in his decision.  Plaintiff contends that a reversal is necessary because the ALJ failed to give appropriate weight to the Department of Family Assistance's determination.

The Commissioner is not bound to accept a determination of disability made by another governmental agency. See 20 C.F.R. 404.1504; Padilla v. Apfel, No. 98 CIV. 1341, 1999 WL 1256251, at *5 (S.D.N.Y. Dec. 22, 1999); Hughes v. Apfel, 992 F.Supp. 243, 249 (W.D.N.Y. 1997). Accordingly, the ALJ was not obligated to afford the Department of Family Assistance's determination controlling weight.

Plaintiff correctly notes that the ALJ did not specifically reference the Disability Review Team Certificate dated November 19, 2001. However, this is insufficient, without more, to require reversal of the ALJ's decision. It is well-settled that the ALJ is not required to have mentioned "every item of testimony presented to him" or explain "why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); see also Rufino v. Apfel, 2 F.Supp. 2d 479, 484 (S.D.N.Y. 1998) (noting that ALJ need not "explicitly reconcile every conflicting shred of medical testimony"); Blowers v. Astrue, No. 05-CV-557, 2008 WL 398464, at *6 (N.D.N.Y. Feb. 12, 2008) ("When, as here, the evidence of record permits the Court to glean the rationale of an ALJ's decision, the Court will not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

For the reasons discussed below, this Court finds that the ALJ's rationale can be readily "gleaned" from his highly detailed decision, which is supported by substantial evidence. As such, this Court finds that the ALJ's decision is not subject to reversal based upon the lack of specific reference to the Disability Review Team Certificate.

### b.   Failure to Find that Plaintiff Met Listing § 12.04

To have an impairment that meets or medically equals the § 12.04 Listing set forth

9

in Appendix 1 of the Regulations, the evidence must first indicate that the claimant has been diagnosed with a "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." Generally, the medical evidence must demonstrate the persistence of certain symptoms of the manic or depressive syndrome, *e.g.* sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and/or thoughts of suicide. § 12.04 (A).[4]

In addition, the claimant must satisfy the "Paragraph B criteria," which "requires the ALJ to rate the degree of the claimant's functional limitation in four specific areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Manning v. Astrue, No. 07-CV-0327, 2009 WL 604900, at *3 (W.D.N.Y. Mar. 9, 2009). "Simply stated, in order to satisfy the Paragraph B criteria, the claimant must demonstrate at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Id. (citing Paratore v. Comm'r of Social Sec. Admin., 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. February 25, 2008)).

In the present case, the ALJ noted that Plaintiff "has diagnoses of depressive disorder, obsessive-compulsive disorder and post-traumatic stress disorder." (T at 17).

---

[4]Under § 12.04 (C), a claimant would automatically meet the Listing if there was documented evidence of any of the following: "(1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." § 12.04 (C). However, Plaintiff does not assert that any of these factors are present in this case. As such, subsection (C) of § 12.04 is not at issue.

However, the ALJ found that Plaintiff's "severe mental impairments have not resulted in marked functional limitations." (T at 17).  Further, the ALJ concluded that Plaintiff "has, at most mild limitations with regard to activities of daily living." (T at 17).  The ALJ noted that Plaintiff "has no episodes of decompensation or deterioration" and concluded that he has "no more than mild to moderate limitations with regard to concentration and pace." (T at 18).  Lastly, the ALJ determined that Plaintiff "has no more than moderate limitations of social functioning." (T at 18).

This Court finds that the ALJ's determination was supported by substantial evidence. Plaintiff lives alone and is capable of performing activities of daily living (*e.g.* cleaning, cooking, shopping, driving, paying bills) with very minimal limitations.  (T at 114-15, 117-19).  Plaintiff's daily activities include caring for numerous cats and, at times, administering IV medications to certain of the animals.  (T at 114, 419).

Although "limited" in mental functioning, Plaintiff was described by Physician's Assistant David Tisdale as "reacting appropriately with others and maintaining socially appropriate behavior without exhibiting behavior extremes." (T at 204).  Plaintiff indicated that he occasionally visited with a neighbor, tends a small garden, and cleans his own house. (T at 419).  Dr. David Mooney conducted a psychiatric evaluation and noted some "convincing obsessions and compulsions," but noted "no major abnormality" with regard to Plaintiff's attention and concentration. (T at 458).  Further, Dr. Mooney concluded that Plaintiff's judgment and insight were "good" and noted concern about the possibility that Plaintiff was "malingering." (T at 459).

Plaintiff points to the reports prepared by David J. Meeker, PhD. and Brett Hartman, PhD. as indicating that he met the "Paragraph B" criteria.  However, Dr. Meeker  opined

11

that "[w]ith regard to activities of daily living," Plaintiff appeared to have "no significant difficulties." (T at 185).  Concerning personal and social skills, Dr. Meeker concluded that Plaintiff had "moderate" limitations that might "*possibly*" be considered "moderately severe." (T at 185) (emphasis added).  Dr. Hartman described Plaintiff's thought processes as "coherent and goal oriented." (T at 318).  Although he noted that Plaintiff's affect and mood were "anxious" and "dysphoric," Dr. Hartman found that Plaintiff's attention and concentration were only "mildly impaired." (T at 318-19).  Further, while he determined that Plaintiff could have difficulties performing certain tasks and interacting with others, Dr. Hartman concluded that Plaintiff "is able to follow and understand simple directions and instructions" and has a "fair ability to learn new tasks and a fair ability to make appropriate decisions." (T at 319-20).

As noted above, to satisfy the Paragraph B criteria and meet or equal Listing § 12.04, Plaintiff would have to demonstrate at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; (4) or repeated episodes of decompensation, each of extended duration.  After reviewing the medical evidence referenced above, the Commissioner concluded that Plaintiff had not met this burden.

For the foregoing reasons, this Court finds that the Commissioner's decision was in accordance with the law and supported by substantial evidence.  See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir.1982) (affirming Commissioner's decision where

ALJ "set forth sufficient rationale in support of his decision ... not to find a listed impairment.").

### c.    Weight Given to Dr. Satloff and Dr. Abeles

Plaintiff asserts that the ALJ afforded undue weight to the opinions of Dr. Aaron Satloff, a non-examining consultive psychiatrist, and Dr. Ernest Abeles, a non-examining consultive orthopedist.  The pertinent background may be summarized as follows:

Based upon his review of Plaintiff's medical records, Dr. Satloff diagnosed Plaintiff as suffering from major depressive disorder, obsessive compulsive disorder, and post-traumatic stress disorder.  (T at 334).  However, Dr. Satloff concluded that Plaintiff's impairments were not severe enough to meet or equal any impairment described in the Listing of Impairments contained in Appendix 1.  (T at 334).  In addition, Dr. Satloff made the following specific findings: Plaintiff's ability to understand, remember, and carry out instructions was not affected by his impairments (T at 338); Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures was not affected by his impairments (T at 339).  The ALJ afforded "substantial weight" to Dr. Satloff's determination, finding that it was "consistent with the objective evidence in the record."  (T at 25).

"[T]he report of a consultative physician can constitute substantial evidence." Punch v. Barnhart, No. 01 Civ. 3355, 2002 WL 1033543, at *12 (S.D.N.Y. May 21, 2002).  Indeed, "[u]nder 20 C.F.R. § 404.1527, not only may the reports of consultative or non-examining physicians constitute substantial evidence of disability, they may even override the opinions of treating physicians." Pease v. Astrue, 06-CV-0264, 2008 WL 4371779, at *9 (N.D.N.Y. Sep. 17, 2008)(Snell v. Apfel, 177 F.3d 128, 132-33 (2d Cir.1999); Cruz v. Barnhart, 04-

13

CV-9011, 2006 WL 1228581, at *11-14 (S.D.N.Y. May 8, 2006)).

In the present case, Dr. Satloff's conclusions were consistent with the medical evidence.  For example, as noted by the ALJ, Dr. Hartman (who did examine Plaintiff) found that Plaintiff was able to follow and understand simple directions and instructions. (T at 20, 319).  Further, Dr. Hartman concluded that Plaintiff was likely to have only "moderate" limitations on his ability to interact with the public and deal with normal stresses. (T at 320).  The ALJ also afforded Dr. Hartman's conclusions "substantial weight," noting that Dr. Hartman had the opportunity to examine Plaintiff.  (T at 25).

Given that Dr. Satloff's findings were consistent with Dr. Hartman's, it was proper for the ALJ to afford substantial weight to Dr. Satloff's report.  Moreover, Dr. Satloff's findings were supported by the evidence concerning Plaintiff's daily activities, which included such detailed tasks as administering IV medication to cats, managing his finances, driving himself to and from appointments, cleaning house, tending a garden, and occasionally visiting a neighbor. (T at  114-15, 117-19, 419).  In light of the foregoing, this Court finds no error in the ALJ's decision to afford substantial weight to Dr. Satloff's conclusions.

Plaintiff's medical records were also reviewed by non-examining orthopedist Ernest Abeles, who concluded that there was insufficient objective evidence of disability.  (T at 353).  Dr. Abeles noted that Plaintiff was uncooperative when asked to demonstrate motion.  (T at 353).  Dr. Abeles found that medical evidence supported Plaintiff's claims of back pain and occasional neck pain, but concluded that no objective evidence existed to substantiate the claim that Plaintiff was disabled.  (T at 355-56).  Further Dr. Abeles concluded that Plaintiff could occasionally lift/carry twenty (20) pounds, frequently lift/carry

14

ten (10) pounds, stand/walk for at least two (2) hours in an eight (8) hour workday, sit without limitation, push/pull without limitations, and occasionally climb, balance, kneel, crouch, crawl, and stoop.  (T at 357-58).  Dr. Abeles found that Plaintiff could see, communicate, and manipulate objects without limitation.  (T at 359).  The ALJ gave "substantial weight" to Dr. Abeles's findings. (T at 25).

The ALJ also gave substantial weight to the findings of Dr. Nader Wassef, who personally examined Plaintiff.  Dr. Wassef's conclusions were consistent with Dr. Abeles's. Dr. Wassef noted that Plaintiff "refused to perform procedures needed for the evaluation of the cervical spine, lumbar spine, and thoracic spine." (T at 308).  However, Dr. Wassef was able to determine that Plaintiff had the full range-of-motion in his shoulders, elbows, forearms, and wrists bilaterally; along with the full range-of-motion in his hips, knees, and ankles bilaterally.  (T at 308).

In sum, Dr. Wassef noted that Plaintiff should not be involved in "strenuous activity" due to possible cardiovascular issues and should avoid temperature extremes and respiratory irritants due to bronchial asthma.[5]  (T at 310).  However, Dr. Wassef opined that there was "no evidence of limitations of movement" in Plaintiff's "musculoskeletal system." (T at 310).  Dr. Wassef was unable to make a determination regarding Plaintiff's cervical spine and lumbar spine range of motion due to Plaintiff's uncooperative attitude. (T at 310).

Given the consistency between Dr. Wassef's findings and Dr. Abeles's findings, this Court finds no error in the ALJ's decision to afford substantial weight to Dr. Abeles's

---

[5]Plaintiff thereafter underwent a cardiovascular examination, which ruled out any cardiac impairment.  (T at 26).

conclusions.

>    **d.    Failure to Give Controlling Weight to Treating Provider**

Plaintiff argues that the ALJ should have given controlling weight to the assessments of his primary care providers, David Tisdale, a physician's assistant, and his collaborating physician, Dr. Nimesh J. Desai.  Plaintiff has treated with Tisdale/Desai since at least 1999. (T at 220).  Mr. Tisdale diagnosed Plaintiff as suffering from numerous conditions, including "[d]egenerative disc disease of the C-spine, lumbar spine including compromise of the spinal canal at C5-6 with chronic cervical stenosis secondary to cervical spondylosis." (T at 203).  Mr. Tisdale concluded that Plaintiff was "very limited in pushing, pulling and bending and no limitation in sitting here and speaking." (T at 203-204).  Although Tisdale described Plaintiff as mentally "limited," he noted that Plaintiff reacted "appropriately with others" and maintained "socially appropriate behavior without exhibiting behavior extremes." (T at 204).

In a report dated October 31, 2002, and signed by Tisdale and Dr. Desai, it was opined that Plaintiff could occasionally lift/carry twenty (20) pounds, frequently lift/carry less than ten (10) pounds, and stand/walk for at least two (2) hours in an eight (8) hour work day. (T at 276-77).  Tisdale/Desai determined that Plaintiff must periodically alternate sitting and standing to relieve pain and discomfort, and that he was limited in his upper and lower extremities with regard to pushing/pulling.  (T at 277).  Tisdale/Desai further stated that Plaintiff could frequently climb ramps/stairs, but should never climb ladders, rope, or scaffold. (T at 277).  They determined that he could occasionally balance, kneel, crouch, and crawl.  (T at 277).  Plaintiff's ability to reach in all directions was deemed "limited," but he was found to have unlimited ability to handle, finger, and feel.  (T at 278).  Due to

16

asthma, it was recommended that Plaintiff avoid dust, fumes, odors, chemicals, and gases. (T at 278).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

The ALJ considered the opinions of Plaintiff's treating practitioners, but noted that they were "not supportable by the objective evidence in the record." (T at 26).  Plaintiff argues that the ALJ ignored objective evidence supporting the Tisdale/Desai determinations.  In support of this argument, Plaintiff points to a determination by Dr.

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Michael P. Owens and various unspecified evidence concerning problems with Plaintiff's knees, right ankle, and elbows.

However, Dr. Owens simply noted that Plaintiff had "moderate cervical stenosis secondary to cervical spondylosis" and determined that the condition was not "severe" enough to justify surgery.  (T at 182).  Although Dr. Owens mentioned "some degree" of increased risk of a spinal cord injury, which restricts Plaintiff's "safe activity level," he did not reference any work limitations or restrictions related to the condition.  (T at 182).  Indeed, Mr. Tisdale interpreted this reference to mean that Plaintiff should avoid engaging in work "that might injure his head and neck [,] such as frequent automobile driving, taxi driving, etc." (T at 215).

Moreover, as noted by the ALJ, Tisdale/Desai's records were at least somewhat internally inconsistent regarding the level of disability.  For example, on or about May 3, 2001, they opined that Plaintiff was only "moderately limited" in his ability to walk, stand, sit, and lift and that he was unable to perform "heavy" lifting.  (T at 200-201).  They indicated that Plaintiff would require a "quiet stable work setting." (T at 201).  Regarding elbow pain, although Tisdale noted that Plaintiff complained of pain "in his left elbow area and also on the inner aspect of the elbow," Plaintiff has not cited to any evidence of elbow problems beyond these subjective complaints and has not pointed to any objective evidence tending to link the alleged elbow issues with any physical limitations.  (T at 210).  Indeed, the record indicates that Plaintiff declined Tisdale's suggestion that the elbow be x-rayed.  (T at 211).

Lastly, although Plaintiff refused to cooperate with portions of Dr. Wassef's examination, Dr. Wassef determined that Plaintiff had the full range-of-motion in his

shoulders, elbows, forearms, and wrists bilaterally; along with the full range-of-motion in his hips, knees, and ankles bilaterally.  (T at 308).  In addition, he opined that there was "no evidence of limitations of movement" in Plaintiff's "musculoskeletal system."  (T at 310).

In light of the foregoing, and considering that Dr. Abeles, the consultative orthopedic examiner, concluded that Plaintiff was not limited in the manner suggested by the family practice team of Tisdale/Desai, this Court finds that the ALJ's decision not to afford controlling weight to Tisdale/Desai's conclusions was not error and was, in fact, supported by substantial evidence.

### e.    Defective Hypothetical

Lastly, Plaintiff contends that the ALJ presented a defective hypothetical question to the vocational expert and then erroneously relied upon the expert's response to that hypothetical.  During the hearing, the ALJ provided the vocational expert with a hypothetical individual have the following basic characteristics: age 49-54; high school education; work history identical to Plaintiff's; capable of "light work;" required to avoid dust, fumes, smoke, chemicals, etc. due to breathing problems; could only occasionally climb, stoop, crouch, crawl, balance or kneel and never climb rope, ladders, or scaffolding; due to occasional mental/behavioral problems, would require low-stress, simple work with limited interaction with the public. (T at 498-499).

Upon consideration of the foregoing hypothetical, the vocational expert concluded that such a person could perform "light unskilled work," such as a laundry sorter, collator operator, or assembler of small products.   (T at 500).   The ALJ relied upon this determination in support of his finding that Plaintiff had the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (T at 28).

19

Plaintiff argues that the above hypothetical was defective because it failed to include any reference to Plaintiff's hearing loss in one ear, his need for easy access to a handicapped restroom due to gastrointestinal problems, and his knee and elbow issues.

This Court finds Plaintiff's argument unavailing for the following reasons.  First, Plaintiff's counsel was afforded with an opportunity to question the vocational expert. Counsel presented a hypothetical to the expert, but chose not to mention any of the alleged limitations now being asserted before this Court.  (T at 502).  As such, to the extent that there was an arguable defect in the hypothetical posed by the ALJ, Plaintiff's counsel had a ready opportunity to correct that problem by asking a hypothetical including all of the limitations that Plaintiff deemed relevant.   Any such objections to the hypotheticals presented to the vocational expert have therefore been waived.  See Harvey v. Astrue, 05-CV-1094, 2008 WL 4517809, at *15 (N.D.N.Y. Sep. 29, 2008) (collecting cases and finding that plaintiff "forfeited" objections to vocational expert's testimony due to failure to raise objections before ALJ).

Moreover, "an ALJ is not required to include limitations in hypotheticals that are not supported by substantial evidence in the record." Smolinski v. Astrue, No. 07-CV-386S, 2008 WL 4287819, at *4 (W.D.N.Y. Sep. 17, 2008) (citing Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir.1983)).  As noted above, this Court finds that the ALJ's determination of Plaintiff's residual functional capacity was supported by substantial evidence. Accordingly, the ALJ's reliance upon the vocational expert's response to the hypothetical, which incorporated the limitations determined by the ALJ, was proper.  In other words, since substantial evidence supported the ALJ's conclusion that Plaintiff did not have the additional limitations at issue, his decision not to include those limitations in the hypothetical

20

did not amount to error.  See Logan v. Astrue, No. 07 Civ. 4150, 2008 WL 4145515, at *12 (S.D.N.Y. Sept. 8, 2008).

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and consultative examiners, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Court recommends that the Commissioner be GRANTED judgment on the pleadings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:          March 31, 2009

                Syracuse, New York

21

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 31, 2009

Victor E. Bianchini
United States Magistrate Judge